(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No. 2177CV00406B

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein *and* also file the original in the Clerk's Office.

........ Leah Glowachi-Bishop ........................................ , Plaintiff(s)

v.

........ Gerber Life Insurance Company ........................ , Defendant(s)

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve upon Patrick Heffernan, Esq, Tinti & Nains, P.C.

plaintiff's attorney, whose address is 27 Congress Street, Suite 414, Salem, MA 01970 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

145 High Street, Newburyport, MA 01950 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, Judith Fabricant, Esquire, at Salem, the
day of , in the year of our Lord two thousand

*Thomas M. Driscoll Jr.*

Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
   defendant, each should be addressed to the particular defendant.

# PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 20___ , I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (see Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated: _____, 20___ .        _____

N.B.  TO PROCESS SERVER:-
      PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
      THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

|  |
| --- |
| , 20   . |

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

v.

Defendant(s)

SUMMONS
(Mass. R. Civ. P. 4)

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2177CV00406 | Trial Court of Massachusetts The Superior Court |  |
|---|---|---|---|

CASE NAME:
Glowacki-Bishop, Leah vs. Western & Southern Finacial Group, Inc. et al

Thomas H. Driscoll, Jr., Clerk of Courts

TO: Patrick Joseph Heffernan, Esq.
Tinti and Navins, P.C.
27 Congress St Suite 414
Salem, MA 01970

COURT NAME & ADDRESS
Essex County Superior Court - Newburyport
145 High Street
Newburyport, MA 01950

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 07/12/2021 | |
| Response to the complaint filed (also see MRCP 12) | | 08/11/2021 | |
| All motions under MRCP 12, 19, and 20 | 08/11/2021 | 09/10/2021 | 10/12/2021 |
| All motions under MRCP 15 | 08/11/2021 | 09/10/2021 | 10/12/2021 |
| All discovery requests **and depositions** served and non-expert depositions completed | 02/07/2022 | | |
| All motions under MRCP 56 | 03/09/2022 | 04/08/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/08/2022 |
| Case shall be resolved and judgment shall issue by | | | 04/13/2023 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 04/13/2021 | Anne Mitchell | (978)462-4474 |

**Trial Court of Massachusetts**
**The Superior Court**



| DOCKET NUMBER |
|---|
| 2177CV00406 |

**COUNTY** Essex Superior Court (Salem)

| Plaintiff | Leah Glowacki-Bishop | Defendant: | Gerber Life Insurance Company |
|---|---|---|---|
| ADDRESS: | 1 Norris Road, Hamilton, MA 01982 | ADDRESS: | 1311 Mamaroneck Avenue, Suite 350, White Plains, NY 10605 |
| | | | Western & Southern Financial Group, 400 Broadway, Cincinnati, OH 45202 |
| | | | Nestle USA, Inc., 1812 N Moore St, Arlington, VA 22209 |
| Plaintiff Attorney: | Patrick J. Heffernan, Esq. | Defendant Attorney: | |
| ADDRESS: | Tinti & Navins, P.C. | ADDRESS: | |
| 27 Congress Street, Suite 414 | | | |
| Salem, MA 01970 | | | |
| BBO: | 685739 | BBO: | |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A04 | Employment Contract/Wrongful Termination | F | ☒ YES ☐ NO |

*If "Other" please describe: _____

**Is there a claim under G.L. c. 93A?**
☐ YES ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?**
☐ YES ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date

  1. Total hospital expenses _____
  2. Total doctor expenses _____
  3. Total chiropractic expenses _____
  4. Total physical therapy expenses _____
  5. Total other expenses (describe below) _____

  _____

Subtotal (1-5): **$0.00**

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below)

_____

TOTAL (A-F): **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

_____

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Wrongful termination: breach of contract | |
| 2. | Wrongful termination: violation of public policy | |
| 3. | Unlawful age discrimination in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B | |
| 4. | Unlawful gender discrimination in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B | |
| | Total | $180,000.00 |

Signature of Attorney/Unrepresented Plaintiff: X _____    Date: April 9, 2021

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

_____

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X | Date: | April 9, 2021 |
| --- | --- | --- |

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

AA1 Contract Action involving Commonwealth,
    Municipality, MBTA, etc.      (A)
AB1 Tortious Action involving Commonwealth,
    Municipality, MBTA, etc.      (A)
AC1 Real Property Action involving
    Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
    Municipality, MBTA, etc.      (A)
AE1 Administrative Action involving
    Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials    (F)
A02 Goods Sold and Delivered      (F)
A03 Commercial Paper      (F)
A04 Employment Contract      (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract      (F)
A08 Sale or Lease of Real Estate   (F)
A12 Construction Dispute      (A)
A14 Interpleader      (F)
BA1 Governance, Conduct, Internal
    Affairs of Entities      (A)
BA3 Liability of Shareholders, Directors,
    Officers, Partners, etc.      (A)
BB1 Shareholder Derivative      (A)
BB2 Securities Transactions      (A)
BC1 Mergers, Consolidations, Sales of
    Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property      (A)
BD2 Proprietary Information or Trade
    Secrets      (A)
BG1 Financial Institutions/Funds   (A)
BH1 Violation of Antitrust or Trade
    Regulation Laws      (A)
A99 Other Contract/Business Action - Specify (A)

* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

† Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract  (A)
D02 Reach and Apply      (F)
D03 Injunction      (F)
D04 Reform/ Cancel Instrument   (F)
D05 Equitable Replevin      (F)
D06 Contribution or Indemnification  (F)
D07 Imposition of a Trust      (A)
D08 Minority Shareholder's Suit   (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting      (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership   (F)
D13 Declaratory Judgment, G.L. c. 231A  (A)
D14 Dissolution of a Corporation   (F)
D99 Other Equity Action      (F)

### PA Civil Actions Involving Incarcerated Party †

PA1 Contract Action involving an
    Incarcerated Party      (A)
PB1 Tortious Action involving an
    Incarcerated Party      (A)
PC1 Real Property Action involving an
    Incarcerated Party      (F)
PD1 Equity Action involving an
    Incarcerated Party      (F)
PE1 Administrative Action involving an
    Incarcerated Party      (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
    Injury/Property Damage      (F)
B04 Other Negligence - Personal
    Injury/Property Damage      (F)
B05 Products Liability      (A)
B06 Malpractice - Medical      (A)
B07 Malpractice - Other      (A)
B08 Wrongful Death - Non-medical   (A)
B15 Defamation      (A)
B19 Asbestos      (A)
B20 Personal Injury - Slip & Fall   (F)
B21 Environmental      (F)
B22 Employment Discrimination   (F)
BE1 Fraud, Business Torts, etc.   (A)
B99 Other Tortious Action      (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential   (X)
S02 Summary Process - Commercial/
    Non-residential      (F)

### RP Real Property

C01 Land Taking      (F)
C02 Zoning Appeal, G.L. c. 40A   (F)
C03 Dispute Concerning Title      (F)
C04 Foreclosure of a Mortgage   (X)
C05 Condominium Lien & Charges   (X)
C99 Other Real Property Action   (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding   (X)
E97 Prisoner Habeas Corpus      (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E (X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
    G.L. c. 30A      (X)
E03 Certiorari Action, G.L. c. 249, § 4  (X)
E05 Confirmation of Arbitration Awards  (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9  (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8  (X)
E08 Appointment of a Receiver   (X)
E09 Construction Surety Bond, G.L. c. 149,
    §§ 29, 29A      (A)
E10 Summary Process Appeal      (X)
E11 Worker's Compensation      (X)
E16 Auto Surcharge Appeal      (X)
E17 Civil Rights Act, G.L. c.12, § 11H  (A)
E24 Appeal from District Court
    Commitment, G.L. c.123, § 9(b)   (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56   (X)
E95 Forfeiture, G.L. c. 94C, § 47   (F)
E99 Other Administrative Action   (X)
Z01 Medical Malpractice - Tribunal only,
    G.L. c. 231, § 60B      (F)
Z02 Appeal Bond Denial      (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)  (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES     ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

ESSEX, ss.

LEAH GLOWACKI-BISHOP, )
    Plaintiff )
               )
v.                )   C.A. No.: 2177CV00406
               )
WESTERN & SOUTHERN FINANCIAL )
GROUP, INC., )
GERBER LIFE INSURANCE COMPANY, & )
NESTLE USA, INC. )
    Defendants. )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.  Nature of the Action

This is an action for damages and other relief arising out of the wrongful termination of the employment of Plaintiff Leah Glowacki-Bishop ("Plaintiff") by Defendants Gerber Life Insurance Company's ("Gerber Life"), a subsidiary of Western & Southern Financial Group, Inc. ("Western & Southern") and a licensee of Nestle USA, Inc. ("Nestle") ("Gerber Life," "Western & Southern," and "Nestle" collectively, "Defendants").  The claims include: 1) Wrongful termination: breach of contract; 2) Wrongful termination: violation of public policy; 3) Unlawful age discrimination in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B based on and the Age Discrimination in Employment Act; and 4) Unlawful gender discrimination in violation of the Massachusetts Fair Employment Practices Act, G.L. c. 151B.

### II.  Parties

1.  Plaintiff Leah Glowacki-Bishop is an individual who resides at 1 Norris Road, Hamilton, MA 01982.

2.  Defendant Gerber Life Insurance Company is a foreign corporation with a principal place of business located at 1311 Mamaroneck Avenue, Suite 350, White Plains, NY 10605.

3. Defendant Western & Southern Financial Group, is a foreign corporation with a principal place of business located at 400 Broadway, Cincinnati, OH 45202.

4. Defendant Nestle USA, Inc., is a foreign corporation with a principal place of business located at 1812 N Moore St, Arlington, VA 22209.

### III. Venue

5. Venue is appropriate in the Essex County court system pursuant to M.G.L. c. 223 § 1-2 as Plaintiff is a resident of Essex County, Massachusetts, and Defendants conducted business and maintains employees in Essex County, Massachusetts.

### IV. Facts

6. In/around July 2011, Plaintiff was hired by Gerber Life to serve as National Sales Director.

7. Plaintiff's job responsibilities included by were not limited to: 1) managing Agency Distribution Account Relationships; 2) developing new distribution opportunities; 3) driving Agency Sales; and 4) managing the Agency Sales Team.

8. For the past five (5) years, Plaintiff earned an average annual cash compensation (including bonuses) of Four Hundred Fifty Thousand and 00/100 Dollars ($450,000.00).

9. Plaintiff received an additional compensation package that included, but was not limited to health benefits, paid leave, and participation in an employer-sponsored pension plan and 401(k) plans.

10. Defendants maintain a "Equal Employment Opportunity and Anti-Harassment Policy" (the "Policy") (a copy of the Policy is attached as Exhibit 1)

11. The Policy defines "Harassment" as "unwelcomed conduct based on a person's race, color, religion, creed, age, sex, sexual orientation, . . . or any other classification protected by applicable federal, state or local law that becomes a condition of employment or creates a working environment that is intimidating, hostile or offensive.

12. The Policy prohibits retaliation against an employee that in "good faith, mak[es] an internal complaint of any conduct, act or practice violating this Policy."

13. Mr. David Fier ("Mr. Fier"), employed by Defendants, was Plaintiff's direct supervisor.

14. Throughout her employment, Plaintiff was subject to and tolerated the discriminatory and hostile conduct of Mr. Fier.

15. Mr. Fier demonstrated a pattern of conduct of mistreating Plaintiff using routine bullying, harassment and public humiliation tactics thereby creating a hostile work environment.

16. Plaintiff did not directly report Mr. Fier's harassment out of fear of retaliation from Mr. Fier.

17. In September 2019, Plaintiff's harassment complaint was presented by a male Director/colleague of Plaintiff during a meeting of several of Gerber Life's Senior Executives.

18. The Senior Executives failed to investigate this harassment complaint as it related to Plaintiff.

19. On November 13, 2019, Plaintiff was subject to a 60-day Performance Improvement Plan ("PIP") by Mr. Fier. (a copy of the PIP is attached as <u>Exhibit 2</u>).

20. Defendants' PIP did not apply to Plaintiff's job responsibilities.

21. Plaintiff made good-faith efforts to comply with the PIP.

22. Mr. Fier/Defendants refused to engage in any meaningful dialogue regarding the PIP's contents or have meaningful bi-weekly progress meetings as required by the PIP.

23. Plaintiff's PIP was a pretext to mask Mr. Fier's discriminatory and bullying conduct that created a hostile work environment towards Plaintiff.

24. Mr. Fier used the PIP in furtherance Mr. Fier's discriminatory, controlling and harassing conduct.

25. Plaintiff's PIP was set to expire on Sunday, January 13, 2020.

26. Defendants did not communicate, nor took no action to resolve the PIP.

27. Defendants terminated Plaintiff on February 3, 2020.

28. At the time of termination, Plaintiff was fifty-seven (57) years old.

29. On/about October 21. 2020, Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination ("MCAD"), MCAD Docket Number 20BEM02016 and EEOC/HUD Charge Number: 16C-2021-02114 ("MCAD Complaint").

30. Having satisfied the administrative/regulatory requirements of the MCAD, on January 21, 2021, withdrew her MCAD Complaint and incorporated her claims into this action.

### V. Counts of the Complaint

### COUNT I
*-Wrongful Termination: Breach of Contract-*

31. Plaintiff restates and reavers the allegations set forth in the preceding paragraphs and incorporates same hereinafter.

32. In/around July 2011, Plaintiff was hired by Gerber Life to serve as National Sales Director.

33. Defendants maintain a "Equal Employment Opportunity and Anti-Harassment Policy" (the "Policy").

34. The Policy defines "Harassment" as "unwelcomed conduct based on a person's race, color, religion, creed, age, sex, sexual orientation, . . . or any other classification protected by applicable federal, state or local law that becomes a condition of employment or creates a working environment that is intimidating, hostile or offensive.

35. The Policy prohibits retaliation against an employee that in "good faith, mak[es] an internal complaint of any conduct, act or practice violating this Policy."

36. The Policy states "a complaint will be handled promptly."

37. Plaintiff was aware of the Policy.

38. The Policy formed the basis of an employment contract.

39. Plaintiff expected Defendants would follow the Policy upon receiving a harassment complaint.

40. Mr. Fier, employed by Defendants, was Plaintiff's direct supervisor.

41. Throughout her employment, Plaintiff was subject to and tolerated the discriminatory and hostile conduct of Mr. Fier.

42. Mr. Fier demonstrated a pattern of conduct of mistreating Plaintiff using routine bullying, harassment and public humiliation tactics thereby creating a hostile work environment.

43. Despite being aware of the Policy, Plaintiff did not directly report Mr. Fier's harassment out of fear of retaliation from Mr. Fier.

44. In September 2019, Plaintiff's harassment complaint was presented by a male Director/colleague of Plaintiff during a meeting of several of Gerber Life's Senior Executives ("Harassment Complaint").

45. The Policy states "Associates are encouraged to report concerns even if the conduct was not directed at you."

46. The Senior Executives failed to investigate the Harassment Complaint as it relates to the Plaintiff.

47. As Defendants did not investigate the Complaint, Defendants breached its employment contract.

48. In retaliation for the Harassment Complaint, on November 13, 2019, Plaintiff was subject to a 60-day PIP by Mr. Fier.

49. Defendant's PIP did not apply to Plaintiff's job responsibilities.

50. Plaintiff made good-faith efforts to comply with the PIP.

51. The Policy expressly prohibits retaliation.

52. Mr. Fier/Defendants refused to engage in any meaningful dialogue regarding the PIP's contents or have meaningful bi-weekly progress meetings as required by the PIP.

53. Plaintiff's PIP was a pretext to mask Mr. Fier's discriminatory and bullying conduct that created a hostile work environment towards Plaintiff.

54. Mr. Fier used the PIP in furtherance of Mr. Fier's discriminatory, controlling and harassing conduct.

55. Plaintiff's PIP was set to expire on Sunday, January 13, 2020.

56. Defendants did not communicate, nor took no action to resolve the PIP.

57. Defendants terminated Plaintiff on February 3, 2020.

58. As Plaintiff was termination in relation for the Harassment Complaint, Defendants breached the Policy/employment contract.

59. As a direct result of Defendants' breach of its employment contract with the Plaintiff, Plaintiff suffered damages, financial and otherwise.

<u>COUNT II</u>
*-Wrongful Termination: Violation of Public Policy-*

60. Plaintiff restates and reavers the allegations set forth in the preceding paragraphs and incorporates same hereinafter.

61. In/around July 2011, Plaintiff was hired by Gerber Life to serve as National Sales Director.

62. Defendants maintain a "Equal Employment Opportunity and Anti-Harassment Policy" (the "Policy").

63. The Policy defines "Harassment" as "unwelcomed conduct based on a person's race, color, religion, creed, age, sex, sexual orientation, . . . or any other classification protected by applicable federal, state or local law that becomes a condition of employment or creates a working environment that is intimidating, hostile or offensive.

64. The Policy prohibits retaliation against an employee that in "good faith, mak[es] an internal complaint of any conduct, act or practice violating this Policy."

65. The Policy states "a complaint will be handled promptly."

66. Plaintiff was aware of the Policy.

67. The Policy formed the basis of an employment contract.

68. Plaintiff expected Defendants would follow the Policy upon receiving a harassment complaint.

69. Mr. Fier, employed by Defendants, was Plaintiff's direct supervisor.

70. Throughout her employment, Plaintiff was subject to and tolerated the discriminatory and hostile conduct of Mr. Fier.

71. Mr. Fier demonstrated a pattern of conduct of mistreating Plaintiff using routine bullying, harassment and public humiliation tactics thereby creating a hostile work environment.

72. Despite being aware of the Policy, Plaintiff did not directly report Mr. Fier's harassment out of fear of retaliation from Mr. Fier.

73. In September 2019, Plaintiff's harassment complaint was presented by a male Director/colleague of Plaintiff during a meeting of several of Gerber Life's Senior Executives ("Harassment Complaint").

74. The Policy states "Associates are encouraged to report concerns even if the conduct was not directed at you."

75. The Senior Executives failed to investigate the Harassment Complaint as it related to the Plaintff.

76. Defendants termination of Plaintiff after failing to follow the Policy, represents a violation of public policy.

77. As a direct result of Defendants' wrongful termination of Plaintiff in violation of public policy, Plaintiff suffered damages, financial and otherwise.

<u>COUNT III</u>
*-Age Discrimination in Violation of Massachusetts Fair Employment Practices Act, G.L. c. 151B*
*and the Age Discrimination in Employment Act-*

78. Plaintiff restates and reavers the allegations set forth in the preceding paragraphs and incorporates same hereinafter.

79. At the time of her termination, Plaintiff was fifty-seven (57) years old.

80. At the time of her termination, Plaintiff had thirty-five (35) years of professional experience directly related to her role/responsibilities.

81. Throughout her employment, Plaintiff was qualified to perform her job responsibilities as evidenced by: 1) her positive performance reviews throughout her performance; 2) her receipt of raises and bonuses; and 3) her expansion of positive/profitable relationships with Gerber Life's distribution network.

82. Plaintiff received positive feedback from Western & Southern's executive leadership as recently as January 10, 2020, just three (3) weeks prior to her termination.

83. Plaintiff's termination was based on a pattern of Mr. Fier's discriminatory, harassing and bullying conduct based on Plaintiff's age and not based on Plaintiff's performance and contributions to the Gerber Life throughout her employment.

84. On/about October 21. 2020, Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination ("MCAD"), MCAD Docket Number 20BEM02016 and EEOC/HUD Charge Number: 16C-2021-02114 ("MCAD Complaint").

85. Having satisfied the administrative/regulatory requirements of the MCAD, on January 21, 2021, withdrew her MCAD Complaint and incorporated her claims into this action.

86. As a direct result of Defendants' discriminatory practices in violation of Massachusetts Fair Employment Practices Act, G.L. c. 151B and Age Discrimination in Employment Act, Plaintiff suffered damages, financial and otherwise.

COUNT IV
*-Gender Discrimination in Violation of Massachusetts Fair Employment Practices Act, G.L. c. 151B-*

87. Plaintiff restates and reavers the allegations set forth in the preceding paragraphs and incorporates same hereinafter.

88. At the time of her termination, Plaintiff was fifty-seven (57) years old.

89. At the time of her termination, Plaintiff had thirty-five (35) years of professional experience directly related to her role/responsibilities.

90. Throughout her employment, Plaintiff was qualified to perform her job responsibilities as evidenced by: 1) her positive performance reviews throughout her performance; 2) her receipt of raises and bonuses; and 3) her expansion of positive/profitable relationships with Gerber Life's distribution network.

91. Defendants have engaged in discriminatory employment practices that have a disparate impact on female employees that are far less likely to advance to higher-level management positions than male counterparts.

92. On/about October 21. 2020, Plaintiff filed a Complaint with the Massachusetts Commission Against Discrimination ("MCAD"), MCAD Docket Number 20BEM02016 and EEOC/HUD Charge Number: 16C-2021-02114 ("MCAD Complaint").

93. Having satisfied the administrative/regulatory requirements of the MCAD, on January 21, 2021, withdrew her MCAD Complaint and incorporated her claims into this action.

94. As a direct result of Defendants' discriminatory practices in violation of Massachusetts Fair Employment Practices Act, G.L. c. 151B, Plaintiff suffered damages, financial and otherwise.

<u>VI. Prayers for Relief</u>

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter the following relief:

A. Enter Judgment in favor of the Plaintiff against the Defendants on all Counts;

B. Award Plaintiff compensatory and punitive damages including costs, attorneys' fees, and interest; and,

C. Grant Plaintiff such other relief as this Court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

> Respectfully submitted,
> Plaintiff Leah Glowacki-Bishop,
> By her attorney,
>
>
> Patrick J. Heffernan, Esq.
> BBO No. 685739
> Tinti & Navins, P.C.
> 27 Congress Street, Suite 414
> Salem, MA 01970
> (978) 745-8065
> pheffernan@tintinavins.com

Date: April 9, 2021

# EXHIBIT 1

TO:  Our Associates

FROM:  John F. Barrett
Chairman, President and
Chief Executive Officer
Western & Southern Financial Group

## GERBER LIFE INSURANCE COMPANY, INC.

### Equal Employment Opportunity and Anti-Harassment Policy

All associates of Gerber Life Insurance Company, Inc. ("Gerber Life"), a subsidiary of Western & Southern Financial Group, are expected to treat each other in a manner that connotes dignity and respect. Gerber Life is committed to providing a comfortable work environment that is free of unlawful discrimination and harassment, including sexual harassment. Through enforcement of this Equal Employment Opportunity and Anti-Harassment Policy ("Policy") and by education of associates, Gerber Life will seek to prevent, correct and discipline behavior that violates this Policy. Gerber Life prohibits all conduct that violates this Policy regardless of whether or not it rises to the level of illegal harassment, discrimination, or retaliation under applicable law.

### Equal Employment Opportunity

Gerber Life is an equal opportunity employer. It is a violation of this Policy to discriminate against any applicant or associate with respect to employment because of such person's race, color, religion, creed, age, sex, sexual orientation, national origin, citizenship status, military or veteran status, disability, genetic makeup, marital status, domestic violence victim status, or any other classification protected by applicable federal, state or local law. This includes hiring, job assignment, training, compensation, performance evaluations, discipline, promotion, termination, and other conditions or privileges of employment. Certain states and localities provide protections in addition to those specifically mentioned in this letter. It is Gerber Life's policy to comply with all applicable law. Unless it imposes undue hardship, reasonable accommodations will be provided to qualified applicants and associates with disabilities.

### Harassment

In keeping with Gerber Life's culture and commitment to providing a respectful work environment in which all associates can achieve top-notch performance, harassment is strictly prohibited under this Policy. Harassment is defined as unwelcomed conduct based on a person's race, color, religion, creed, age, sex, sexual orientation, national origin, citizenship status, military or veteran status, disability, genetic makeup, marital status, domestic violence victim status, or any other classification protected by applicable federal, state or local law that becomes a condition of continued employment or creates a working environment that is intimidating, hostile or offensive.

A hostile working environment can be created by anyone in the work environment, including supervisors, other associates, customers, contractors or visitors.

Sexual harassment includes unsolicited and unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when:

- submission to or rejection of such conduct is either explicitly or implicitly a term or condition of an individual's employment;

- submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or

- such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Harassment, including sexual harassment, may be verbal, non-verbal or physical. Examples are:

- Verbal - Vulgar or profane language; offensive jokes or insults; racial or ethnic slurs; sexual propositions, comments or innuendoes; threatening or demeaning comments, negative stereotyping

- Non-verbal - Written or graphic material that ridicules, denigrates, insults or shows hostility, aversion or disrespect toward an individual or group because of national origin, race, color, religion, age, sex, sexual orientation, disability or other protected classes; sexually explicit, suggestive or offensive objects, pictures or cartoons; leering; vulgar or otherwise offensive gestures; suggestive or insulting sounds

- Physical - Assault, stalking, sexual relations, improper touching or brushing

## Retaliation

In addition, harassment, intimidation, threats, coercion, discrimination or retaliation in any form, including threats of retaliation against any associate or applicant is strictly prohibited for: (1) in good faith, making an internal complaint of any conduct, act or practice violating this Policy or participating in any internal investigation of a violation of this Policy; (2) filing a complaint allowed by an equal employment opportunity law or regulation ("EEO laws"); (3) participating in an investigation or any other activity undertaken by any governmental agency related to compliance with any EEO law; (4) opposing in good faith any act or practice that violates any EEO law; or (5) exercising any right under any EEO law.

## Management Responsibilities

All managers and supervisory personnel are to do their best to assure the effectiveness of this Policy. Each will be judged by efforts and success in this area as much as in any other area of management responsibility. Failure to implement this Policy may result in disciplinary action, up to and including discharge. At the first sign of a potential problem regarding discrimination, harassment, or retaliation, including upon receiving a complaint from an applicant or associate, immediately notify your own management, your Human Resources representative, Brian Stuck, Vice President Human Resources and/or Linda Lake, Senior Vice President of Human Resources, in the Home Office at (513) 629-1134.

## Complaint Procedure

Any associate who has a complaint of harassment, discrimination, or retaliation is expected to bring the situation to the attention of responsible company officials. Associates should contact any one of the following:

- Your Supervisor or Manager
- Your Human Resources Representative
- Brian Stuck, Vice President,  231-928-2998
- Linda Lake, Senior Vice President, 513-629-1134 or 1-800-333-5222, ext: 1134
- You may choose to report your concerns anonymously by using the Ethics Hotline at 1-800-805-7270. An independent third party vendor operates the Ethics Hotline and will record your concern and route it to the appropriate area (which is typically Human Resources for a complaint related to this Policy). The vendor will not reveal your identity without your explicit consent.

All complaints will be handled promptly. Gerber Life will keep the identity of the complainant and the person accused confidential to the extent practicable under the circumstances.

Gerber Life strongly encourages associates to use this procedure to promptly report conduct that they believe may violate this Policy due to the damaging nature of discrimination, harassment and retaliation to the victims and to the entire workforce. Associates are encouraged to report concerns even if the conduct was not directed at you. The sooner Gerber Life is made aware of the issue, the sooner it can be addressed. No reprisal or retaliation will be permitted against anyone who, in good faith, lodges such a complaint. However, filing a knowingly false or malicious complaint is an abuse of this Policy and will be treated as a violation. Associates are expected to cooperate in the investigation of any complaint made pursuant to this Policy, including complying with requests for information. Appropriate corrective action and disciplinary measures, including discharge where justified, will be taken to remedy violations of this Policy.

Ed. 5/1/2019

# EXHIBIT 2

 **Western & Southern Financial Group**

**Performance Improvement Plan (PIP)**

On November 11, 2019, we discussed the need for improvement in teamwork, inter-personal relationships, adhearance to company policies and procedures, respect for other team members. Since then, there has been minimal to no progress in meeting these improvement goals. We want you to succeed here and are willing to help, but your current performance is unacceptable. Therefore, the following activities must be accomplished within the time frames indicated below for you to obtain a satisfactory level of performance.

| Name | Leah Glowacki-Bishop | Manager Name | David Fier |
|---|---|---|---|
| Position Title | Director | Business Unit | Independent Distribution |
| Employee ID | 139093 | PIP Duration | 60 Days |
| Effective Date | November 13, 2019 | | |
| Standards of Performance Reviewed | ☐ Productivity  ☐ Efficiency  ☒ Teamwork  ☐ Quality  ☐ Other (define): | | |
| Associate's signature | *Leah Glowacki-Bishop* | Nov 15/19 | |
| Manager Signature | *David Fier* | | |

| Improvement Need | Expected Standard of Performance | Action Steps | Timeframe for Improvement | Progress Reviews |
|---|---|---|---|---|
| What specific improvement needs have been identified? Detail specific dates and examples of where the standards have not been met. | Detail what is expected of the associate. | List specific action steps the associate will take to correct performance as well as the support or resources the supervisor will provide. Specify when the action steps should be completed (e.g. daily, by a certain date, etc.). | List the PIP duration or any applicable earlier timeframe for each improvement area. | How often to meet to review progress? |
| Failure to treat all team members with respect; has created a divisive atmosphere pitting sales team against service team – this has been going on for several months; being arrogant with peers, subordinates and her manager; As a Director it is expected that you will exhibit a much greater degree of collaboration and leadership with peers.  For example, over the past few months Leah has excluded Karmen Wiseman from emails and | • Immediately stop being condescending to team members; • Treat everyone with respect; • Stop excluding team members from meetings where they might disagree with her | • Immediate change in behavior to reflect expected levels of professionalism in the organization • Include team members with appropriate expertise in meetings and include supervisors and managers in Operations | • 60 days | • Every other week |

P-2326-1903

| Improvement Need | Expected Standard of Performance | Action Steps | Timeframe for Improvement | Progress Reviews |
|---|---|---|---|---|
| What specific improvement needs have been identified? Detail specific dates and examples of where the standards have not been met. | Detail what is expected of the associate. | List specific action steps the associate will take to correct performance as well as the support or resources the supervisor will provide. Specify when the action steps should be completed (e.g. daily, by a certain date, etc.). | List the PIP duration or any applicable earlier timeframe for each improvement area. | How often to meet to review progress? |
| going instead to her direct reports (September 12 & 26); Misrepresenting a call with Jen Brown about whether Sales was on all on-boarding calls when in fact Jen Brown was contacted the same day (September 26, 2019) and she confirmed that Sales was NOT on all on-boarding calls. The same day you sent a text to Jen referring to Michele Schiefer as "...lying sack of | | | | |
| • Failure to follow Standard Operating Procedures (SOP) and blaming others for following the procedures; misinforming distribution partners about the status of projects; initiating calls with Distribution partners and team members about a concern without any prior discussion with team member making them look incompetent; better management of emails; (on-going problems raised by multiple peers and other team members) respond to requests for information in a timelier manner; For example, calls with partners in September in which you failed to confirm the need to have all agents and agencies appointed with Gerber Life prior to the sale of GLIC products instead relying on partner statements thereby creating the impressions with partners that GLIC Operations and Home Office were incompetent and not committed to the project. This resulted in me getting calls directly from the | • Review SOPs and follow them • Establish pre-meetings with team members prior to having calls with Distribution Partners to confirm information • All requests for exceptions from SOPs must be in writing; • Failure to timely respond to requests for comments on documents or procedures will result in them going forward without your input | • Rebuild relationships with management team in Independent Distribution Operations • Make certain Sales team has opportunity to participate in meetings to discuss and review SOPs • All the above steps need to start immediately | • 90 days | • Every other week |

| Improvement Need | Expected Standard of Performance | Action Steps | Timeframe for Improvement | Progress Reviews |
|---|---|---|---|---|
| What specific improvement needs have been identified? Detail specific dates and examples of where the standards have not been met. | Detail what is expected of the associate. | List specific action steps the associate will take to correct performance as well as the support or resources the supervisor will provide. Specify when the action steps should be completed (e.g. daily, by a certain date, etc.). | List the PIP duration or any applicable earlier timeframe for each improvement area. | How often to meet to review progress? |
| partners to explain the compliance concerns, information you should have had if you had checked in advance | | | | |

We will continue to meet to monitor your progress. If appropriate, please identify job-related training/resources needed to assist with the performance plan to your supervisor within five (5) days of receiving this performance plan. Failure to meet and sustain improved performance will necessitate further disciplinary action, up to and including termination at the end of the PIP period. However, the Company reserves the right to terminate your employment during the period if it becomes clear you are not making sufficient progress, performance declines in other areas, or for business reasons unrelated to your performance (e.g. misconduct, lack of work). If you make the required improvement, you must continue to perform at a satisfactory level after the performance plan period ends, or you will be terminated. If you have questions or need additional help, please let your manager know.

While on a performance improvement plan, you are not eligible for promotion, for any type of salary increase, for tuition reimbursement, or to participate in the advancement opportunity program. During this period, you are only able to take accrued PTO. This plan will adversely impact any merit increases. Any type of salary increase (merit, reclassification, etc.) will be deferred by the amount of time you were on the performance improvement plan.

Periodic Review Notes:

| Improvement Need What specific improvement needs have been identified? | Comments | Results (Missed/Met) | Associate Initials | Manager Initials | Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

|  |  |  |  |  |  |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Reoccurring issues within 12 months will typically result in termination of at-will employment for performance issues and for misconduct. For incidents occurring over the 12 month period related to performance, the situation will be reviewed to determine if a PIP is appropriate or termination of at-will employment. Anyone who has been on final warning and has further issues may be moved to termination.

**PIP Conclusion (check one):**

☐ Performance Improvement Plan satisfactorily completed on:　　[date].

☐ Performance Improvement Plan not satisfactorily completed by:　[date]. Recommendation (attach and submit to Human Resources).

　Manager Name: _____ Date: [date].