```
                    United States District Court
                      District of Massachusetts
 _____
                               )
Leah Glowacki-Bishop,          )
                               )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No.
                               )    21-11000-NMG
Western & Southern Financial   )
Group Inc. et al.,             )
                               )
        Defendants.            )
 _____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises out of the termination of the employment of Leah Glowacki-Bishop ("Glowacki-Bishop" or "plaintiff") by Gerber Life Insurance Company ("Gerber"), a subsidiary of Western & Southern Financial Group, Inc. ("Western") (collectively, with Gerber, "defendants"). Glowacki-Bishop filed a four-count complaint in the Massachusetts Superior Court for Essex County in April, 2021, which defendants subsequently removed to this Court.

Pending before the Court is the defendants' motion for judgment on the pleadings.

### III. <u>Background</u>

Gerber hired Glowacki-Bishop to serve as its National Sales Director in 2011 under the direct supervision of David Fier ("Fier"). According to plaintiff's complaint, throughout her employment, she was subject to and tolerated the discriminatory and hostile conduct of Fier. The conduct included routine bullying, harassment and public humiliation that created a hostile work environment. Although Glowacki-Bishop did not report this harassment out of fear of retaliation, in September, 2019, one of plaintiff's colleagues presented her harassment complaint to several Gerber senior executives. Glowacki-Bishop contends that the executives failed to investigate the complaint and, in November, 2019, Fier subjected Glowacki-Bishop to a 60-day Performance Improvement Plan ("PIP") set to expire on January, 2020.

According to her complaint, Glowacki-Bishop made a good faith effort to comply with the PIP but defendants and Fier refused to engage in any meaningful dialogue regarding her performance or compliance with PIP's requirements. She submits that the PIP was a pretext to mask Fier's discriminatory conduct. Glowacki-Bishop, at age 57, was terminated in February, 2020.

In October, 2020, Glowacki-Bishop filed a complaint with the Massachusetts Commission Again Discrimination (MCAD) regarding her termination. She withdrew that complaint in January, 2021 and, shortly thereafter, filed a complaint in the Massachusetts Superior Court for Essex County incorporating her original claims. The complaint sets forth four counts against both defendants: (1) breach of contract, (2) wrongful termination in violation of public policy, (3) age discrimination, in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and (4) gender discrimination, in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B.  Defendants removed the action to this Court in June, 2021 and, after filing an answer to plaintiff's complaint, moved for judgment on the pleadings.  Defendants seek judgment on: (1) all of plaintiff's claims against Western and (2) Counts I and II as to both defendants.

## IV. **Motion for Judgment on the Pleadings**

### A. Legal Standard

Although a Rule 12(c) motion for judgment on the pleadings considers the factual allegations in both the complaint and the answer, it is governed by the same standard as a Rule 12(b)(6)

motion to dismiss. See Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and be "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a claim to be facially plausible, the pleadings must show "more than a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff cannot merely restate the defendant's potential liability and the court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id.

In considering the merits of such a motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). The Court may also consider documents if (1) the parties do not dispute their authenticity, (2) they are "central to the plaintiffs' claim" or (3) they are "sufficiently referred to in the complaint." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

**B. Application**

   **i.   Personal Jurisdiction as to Western**

Defendants first assert that the Court lacks personal jurisdiction as to Western.

In a diversity suit, this Court acts as "the functional equivalent of a state court sitting in the forum state." See Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 8 (1st Cir. 2009).  As such, to make a prima facie showing of personal jurisdiction, the plaintiff must demonstrate that the exercise of jurisdiction is permitted by the forum's long-arm statute and coheres with the Due Process Clause of the Fourteenth Amendment of the United States Constitution by showing that each defendant has "minimum contacts" with Massachusetts. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002).

The requirements of the Massachusetts long-arm statute, M.G.L. c. 223A § 3, are substantially similar to (although potentially more restrictive than) those imposed by the Fourteenth Amendment. See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016) (noting that "Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution").  Because the defendants have not invoked the

Massachusetts long-arm statute, the Court will proceed directly to the constitutional analysis. See id.

The Court's jurisdiction over a party may be either "specific" or "general". Swiss II, 274 F.3d at 618. Specific jurisdiction requires a "demonstrable nexus" between the claims of the plaintiff and the defendant's contacts in the forum state. Id. General jurisdiction, on the other hand, exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." Id. (quoting United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). Here, because plaintiff presents only argument for specific jurisdiction, this Court will narrow its jurisdictional analysis accordingly.

The "demonstrable nexus" required to establish specific jurisdiction can be created only by the defendant's contacts with the forum state. Harlow v. Children's Hosp., 432 F.3d 50, 58 (1st Cir. 2005). In analyzing such contacts, the Court must consider three factors: relatedness, purposeful availment and reasonableness. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009). An affirmative finding as to all three is required before a court can exercise specific

jurisdiction over a defendant. Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

Defendants claim that plaintiff cannot satisfy this burden because Western engaged in no significant activities in Massachusetts, thus defeating a finding of either relatedness or purposeful availment. Defendants point out that Western is not registered to do business in Massachusetts and has no offices in the Commonwealth. Moreover, they assert that there is no "nexus" between plaintiff's claims and Western because Western, Gerber's corporate parent, did not employ Glowacki-Bishop. Defendants also note that Western is not automatically subject to personal jurisdiction in Massachusetts because of the activities of its subsidiary.

Glowacki-Bishop refutes defendants' reasoning, claiming that her complaint sets forth sufficient evidence of Western's control over Gerber and, thus, a sufficient nexus between her employment-based claims and Western. She points out that her claims emanate from, inter alia, an alleged breach of Gerber's "Equal Employment Opportunity and Anti-Harassment Policy" ("the Policy"), which was authorized and directed for adoption by John F. Barrett, Western's Chairman, President and Chief Executive Officer.

Plaintiff's thesis relies entirely upon Western's supposed corporate control over Gerber. However,

> there is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary.

Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007). To overcome that presumption for the purpose of establishing personal jurisdiction over the parent corporation, there must be a "plus factor beyond the subsidiary's mere presence within the bosom of the corporate family." Genzyme Corp. v. Shire Hum. Genetic Therapies, Inc., 906 F.Supp. 2d 9, 19 (D. Mass. 2012) (quoting Donatelli v. Nat'l Hockey League, 893 F.2d 459, 465–466 (1st Cir. 1990)). Such "plus" factors include an agency relationship between the two entities, a significant degree of control by the parent that is more than common ownership and directorship, or clear and convincing evidence that the subsidiary is a corporate shell, rather than a stand-alone entity. Id. at 466.

Even accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, Glowacki-Bishop clearly fails to defeat this presumption and, thus, fails to establish that this Court has personal jurisdiction over Western. Plaintiff relies almost exclusively upon her assertion that Gerber is a subsidiary of Western but,

as described supra, that fact alone is insufficient.  That the
Policy at issue was maintained by Western and directed for
adoption by Gerber also fails to satisfy this burden.  It does
not produce the "strong and robust evidence" required to prove
that Western had control over Gerber, control that would reveal
that Gerber is "a mere shell" of its corporate parent. Negron-
Torres at 24; see In re California Gasoline Spot Mkt. Antitrust
Litig., No. 20-CV-03131-JSC, 2021 WL 4461199, at *3 (N.D. Cal.
Sept. 29, 2021) ("[I]nsisting that a subsidiary follow
corporate-wide policies does not make a parent an agent of
a subsidiary for specific personal jurisdiction purposes); In re
Latex Gloves Prods. Liab. Litig., No. MDL 1148, 2001 WL 964105,
at *3 (E.D. Pa. Aug. 22, 2001) (concluding that articulation of
general policies and procedures by corporate parent, among other
factors, does not establish an alter ego relationship between
parent and subsidiary).  Based upon plaintiff's detailed
allegations, this Court lacks personal jurisdiction over
Western.

    **ii.   Preemption**

 Defendants also move for judgment on the pleadings with
respect to Counts I and II, contesting that Glowacki-Bishop's
breach of contract and wrongful termination claims are preempted
by Massachusetts's anti-discrimination statute, M.G.L. c. 151B.

Plaintiff entirely neglects to rebut their argument in her opposition to defendants' motion.

That statute provides: "as to acts declared unlawful by section 4, the administrative procedure provided in this chapter under section 5 shall, while pending, be exclusive." M.G.L. c. 151B § 9.  As the Supreme Judicial Court has articulated, "where applicable, G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections." Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 156 (D. Mass. 2009) (quoting Charland v. Muzi Motors, 417 Mass. 580, 586 (1994)).  Courts have applied that provision broadly, finding that preemption bars "factually related claims...regardless of whether the plaintiff satisfied the administrative procedural requirements of c. 151B." LaFountaine v. BJ's Wholesale Club, Inc., No. 080487D, 2008 WL 4926675, at *6 (Mass. Super. Oct. 27, 2008); see also Bolduc, 629 F. Supp. 2d at 156 ("While the 151B exclusivity provision clearly requires exhaustion of administrative remedies, it appears to have a wider sweep.").

Therefore, the fact that Glowacki-Bishop waited the required 90 days after filing her complaint with the MCAD to commence this civil action in state court, and thus exhausted her administrative remedies, is unavailing on this point. M.G.L.

c. 151B § 9.  Rather, what is relevant to the application of the exclusivity provision is the relation between plaintiff's common law and statutory claims.  Plaintiff's common law claims for breach of contract and wrongful termination cannot survive if they "are merely recast versions" of her claims under under M.G.L. c. 151B. Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996).  This is because:

> to permit such duplication of remedies would allow claimants to bypass the procedural prerequisites ..., crippling the effectiveness of this specific statutory remedy for discrimination in employment.

Id. (quoting Bergeson v. Franchi, 783 F. Supp. 713, 721 (D. Mass. 1992)).

To the extent that plaintiff's complaint adequately states common law claims for relief, they are based upon "the same acts" as her statutory claims and cannot survive. Dyer v. E. Coast Diners, LLC, 33 F. Supp. 3d 82, 89 (D. Mass. 2014) (quoting Robinson v. City of Boston, 71 Mass. App. Ct. 765, 767-68, (Mass. App. Ct. 2008)).  Specifically, plaintiff claims that she faced discrimination during her employment at Gerber and was terminated when she complained of that discrimination.  The statutory remedies available to the plaintiff are, thus, exclusive. See King v. Driscoll, 418 Mass. 576, 584 n. 7 (1994) (G.L. c. 151, § 9(1) provides that statutory redress for employment termination in violation of public policy is

exclusive); Robinson, 71. Mass App. Ct. at 767-768 (dismissing common law breach of contract claim due to M.G.L. c. 151B's exclusivity provision); Gasior v. Massachusetts Gen. Hosp., 446 Mass. 645, 651 (2006) (same).

## ORDER

For the forgoing reasons, the motion of defendants for judgment on the pleadings (Docket No. 11) is **ALLOWED**. Western is therefore dismissed as a party from this litigation, and Counts I and II are dismissed. The statutory claims against Gerber remain.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 22, 2021