```
                   United States District Court
                     District of Massachusetts

_____
                                   )
Leah Glowacki-Bishop,              )
                                   )
          Plaintiff,               )
                                   )
          v.                       )      Civil Action No.
                                   )      21-11000-NMG
Western & Southern Financial       )
Group Inc. et al.,                 )
                                   )
          Defendants.              )
_____)
```

**MEMORANDUM & ORDER**

This case arises from state employment discrimination claims brought by Leah Glowacki-Bishop ("Glowacki-Bishop" or "plaintiff"), a former employee of the defendant, Gerber Life Insurance Company ("Gerber" or "defendant").  Glowacki-Bishop alleges that her direct supervisor subjected her to discriminatory and hostile conduct and fear of retaliation were she to report harassment, which culminated in her termination in February, 2020.

Three of the four counts have been previously disposed of and now before the Court is defendant's motion for summary judgment on plaintiff's remaining claim: gender discrimination in violation of the Massachusetts Fair Employment Practices Act,

M.G.L. c. 151B.  For the reasons that follow, that motion will be allowed.

I.    **Background**

  A. **The Parties**

Glowacki-Bishop lives in Hamilton, Massachusetts.  Gerber is a foreign corporation with a principal place of business in White Plains, New York.  In July, 2011, plaintiff was hired as Gerber's National Sales Director and she held that position until she was terminated in February, 2020.  Gerber produces and distributes life insurance products.  Plaintiff's job responsibilities included creating relationships between Gerber and potential distribution partners, selling Gerber's life insurance products and increasing sales.

  B. **Employment History**

Plaintiff was hired by David Fier ("Fier"), a senior vice president at Gerber.  Throughout her employment, she directly reported to Fier.  After plaintiff's first year at Gerber, the company hired employees who reported directly to her.  Plaintiff interacted daily with the Independent Distribution Operations team in Fremont, Michigan, all of whom reported to Fier. Glowacki-Bishop would develop a relationship with an insurance agency interested in selling Gerber's products, after which the

Operations team would work with the agency to ensure it was appointed, licensed and trained to sell defendant's products.

When conducting employee performance reviews, Gerber uses a three point scale, with "one" being the worst rating and "three" the best. From 2011 through 2016, plaintiff received "two" and "three" ratings from Fier.

In 2017, plaintiff's two direct reports complained to Fier that she was difficult to work with. After consulting with Human Resources, Fier had the two employees report to him directly, rather than to plaintiff. The Operations team in Fremont also expressed negative feedback regarding plaintiff's behavior and communications with them throughout 2017 and 2018. Fier documented that feedback in Glowacki-Bishop's 2017 and 2018 performance reviews.

In 2019, Human Resources suggested that Gerber offer plaintiff a "360 review," comprised of feedback from her direct reports, colleagues, manager and customers about areas in need of improvement. Upon receiving that feedback in May, 2019, plaintiff was to create an "Action Plan" to prioritize areas of improvement. She did not complete the plan for several months, until she was reminded to do so. When Fier reviewed her Action Plan, he noticed that Glowacki-Bishop neglected to address the concerns about improving her relationships with her colleagues.

He asked her to revise the Action Plan in September, 2019, but she did not do so.

According to plaintiff's opposition to defendant's motion for summary judgment, on September 5, 2019, Fier bullied and harassed plaintiff and a colleague, Mr. Rosati.  Although Glowacki-Bishop did not report the harassment out of fear of retaliation, in September, 2019, Mr. Rosati presented her harassment complaint during a meeting with several Gerber senior executives.  Mr. Rosati purportedly told her to expect a call from Human Resources which she never received.  Plaintiff avers that she scheduled a meeting for October 28, 2019, with Human Resources to discuss the harassment but cancelled it that morning out of fear of retaliation.  Glowacki-Bishop contends that the executives failed to investigate the complaint and, in November, 2019, Fier subjected Glowacki-Bishop to a 60-day Performance Improvement Plan ("PIP") that was merely pretext to justify her termination.

According to defendant's statement of undisputed material facts, however, on September 19, 2019, the director of the Operations team sent Fier an unsolicited email about plaintiff's recent behavior, stating that the director had "reached a breaking point," and several employees were looking to leave Gerber rather than continue to work with plaintiff.  Fier

suggested the employees share their concerns with Human Resources.  At the request of Human Resources, Fier drafted a memorandum on October 4, 2019, summarizing his concerns regarding plaintiff's behavior dating back to 2017.

After reviewing the memorandum, Human Resources recommended that Gerber implement the PIP, which plaintiff signed on November 15, 2019.  The PIP outlined complaints about plaintiff and included "Action Steps" instructing her to change her behavior immediately and rebuild relationships with the management team in Operations.  The PIP warned that failure to meet those action steps would require further disciplinary action, up to and including termination.

Accordingly, plaintiff traveled to Fremont in January, 2020 to rebuild relationships with Operations.  She met with several team members who then contacted Human Resources independently to discuss their complaints about plaintiff's conduct at the meetings.

After the trip, Fier and Human Resources discussed plaintiff's performance vis-à-vis the PIP and decided to move forward with termination.  The termination recommendation was reviewed by the legal department and the senior vice president of Human Resources and was then communicated to plaintiff on February 3, 2020.

According to her complaint, plaintiff made a good faith effort to comply with the PIP but defendant and Fier refused to engage in any meaningful dialogue with respect to her performance or to follow the PIP's requirements. Glowacki-Bishop alleges that the PIP was a pretext to mask Fier's discriminatory conduct.

**C. Procedural History**

In October, 2020, Glowacki-Bishop filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) regarding her termination. She withdrew that complaint in January, 2021 and, in April, 2021, filed a complaint in the Massachusetts Superior Court for Essex County incorporating those claims. The complaint sets forth four counts: (1) breach of contract, (2) wrongful termination in violation of public policy, (3) age discrimination, in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et seq.</u>, and (4) gender discrimination, in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B. Defendant removed the action to this Court in June, 2021, on diversity grounds and, after filing an answer to the complaint, moved for judgment on the pleadings in July, 2021.

This Court dismissed Counts I and II in December, 2021, and plaintiff withdrew Count III in August, 2022. Thus, the only remaining claim before the Court is Count IV, for gender discrimination.

## II. Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is warranted if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Gender Discrimination**

　**i. Legal Standard**

Chapter 151B prohibits employers from discriminating against their employees on the basis of sex. M.G.L. c. 151B, § 4. The statute makes it illegal, in relevant part,

> [f]or an employer, by himself or his agent, because of the sex[] . . . of any individual . . . to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

M.G.L. ch. 151B, § 4(1).

Sex discrimination claims under Chapter 151B are subject to the three-stage, burden-shifting test first set out in McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Verdrager v. Mintz, Levin, Cohn, Feris, Glovsky and Popeo, P.C., 50 N.E.3d 778, 793 (Mass. 2016). In order to survive summary judgment, in the first stage, a plaintiff must prove the four elements of a prima facie case of sex discrimination: (1) she is a member of a class protected by the statute, (2) she performed her job at an acceptable level, (3) she was terminated and (4) the position remained open or the employer hired a member of an unprotected group with the same or lesser qualifications than the plaintiff. Id. (citing Blare v. Husky Injection Molding Sys. Boston, 646 N.E.2d 111, 115 (Mass. 1995)).

In the second stage, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for its hiring decision." Id. (citing Blare, 646 N.E.2d at 115). Finally, the third stage shifts the burden back to the employee to show that the "employer's articulated justification is not true but a pretext." Id. (citing Blare, 646 N.E.2d at 115-16).

Massachusetts is a "pretext-only" jurisdiction, so at the third stage, an employee may survive summary judgment merely by demonstrating that the employer's facially proper reasons for termination were not the real reasons, "even if that evidence does not show directly that the true reasons were, in fact, discriminatory." Id. at 794 (citing Bulwer v. Mount Auburn

Hosp., 46 N.E.3d 24, 33-34 (Mass. 2016); Wheelock College v. Massachusetts Comm'm Against Discrimination, 355 N.E.2d 309, 315 (Mass. 1976)).

### ii. Application

Viewing the record in the light most favorable to plaintiff, the Court finds there is no genuine issue of material fact in dispute. Plaintiff has failed to demonstrate that she performed her job at an acceptable level, and thus cannot establish a prima facie case of sex discrimination. See Verdrager, 50 N.E.3d at 793.

Although Glowacki-Bishop refers to her satisfactory performance reviews, citing her deposition testimony, she fails to address any reviews or complaints from 2017 to 2019. Notably, plaintiff does not dispute the complaints that her direct reports made about her in early 2017, nor the negative feedback from the Operations team in 2017. Plaintiff fails to address her 2018 performance review in which she received a "one" for "improvement needed" in the Behaviors or Leadership Competencies category and was told "[y]ou need to improve your communications with others."

Plaintiff also does not dispute that in 2019, after her "360 Review," she failed to follow through with an "Action Plan" focused on her suggested areas of improvement. She also does

not dispute the September 19, 2019 email from the head of Operations complaining that she has "reached a breaking point" and three of her employees "are on the verge of leaving [Gerber] because they don't want to work with [plaintiff]." The email went on to report that plaintiff

> speaks to [the] team . . . in a manner that I would call belittling, disrespectful and bullying.

Considering these undisputed facts, this Court cannot find that plaintiff performed her job at an acceptable level. See Hillstrom v. Best Western TLC Hotel, 265 F. Supp. 2d 117, 124 (D. Mass. 2003) (finding no prima facie case of discrimination when plaintiff "offer[ed] no evidence rebutting the essential accuracy of [employer's] dissatisfaction of his job performance").

Glowacki-Bishop also failed to accomplish the goals set out in her Performance Improvement Plan ("PIP"). Although she alludes to the suggestion that she may not have had sufficient time to accomplish these goals due to her "work travel and vacation," she was given 60 days to

> immediate[ly] change [her] behavior to reflect expected levels of professionalism in the organization [and] rebuild relationships with management team in Independent Distributions Operations.

- 11 -

Plaintiff did not dispute her negative behavior during her relationship rebuilding meetings with the Operations team during which she: informed her colleagues that she was there only because of the PIP, "cut off" her colleagues, was late to meetings, and ended a meeting abruptly saying, "we are done here."  Because plaintiff did not meet the goals set out in her PIP, this Court finds that she has not satisfied her burden. See Hennessy v. Hill-Rom Co., No. 17-cv-12566, 2020 WL 7024649, at *3 (D. Mass. Nov. 30, 2020) (Sorokin, J.) (finding that plaintiff who did not accomplish goals outlined in PIP did not perform his job at an acceptable level).

Without a prima facie case, plaintiff's claim of gender discrimination in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B fails, and the Court will allow defendant's motion for summary judgment on that count.

In any event, even if plaintiff had made out a prima facie case, defendant has shown a legitimate, nondiscriminatory reason for her termination.  Glowacki-Bishop failed to change her behavior and rebuild relationships with the Operations team, two requirements outlined in the PIP.  The PIP stated that if plaintiff did not improve her performance, she may face potential termination at the end of the PIP timeframe. Termination based on "substandard performance . . . described by

the uncontested evidence put forward by the defendant" is a credible, nondiscriminatory reason that justifies allowing summary judgment. See Rios-Jimenez v. Principi, 520 F.3d 31, 42-43 (1st Cir. 2008).

Finally, plaintiff does not proffer sufficient evidence to show that the decision to terminate her employment was pretextual. She points to an incident on September 5, 2019, where she asserts that her supervisor, David Fier, "engaged in bullying and harassing conduct" toward her and a male colleague, Mr. Rosati. She contends that Mr. Rosati subsequently made a complaint on behalf of himself and the plaintiff and suggests that, because she was put on a PIP and then terminated while Mr. Rosati was promoted, she experienced sex discrimination. The plaintiff's behavior and her substandard performance had, however, been the subject of complaints by her colleagues for two years before the alleged harassment complaint. Thus, the timing of Mr. Rosati's alleged complaint on plaintiff's behalf is insufficient to demonstrate that the PIP was pretext for gender-based animus on the part of her supervisor. Rather, the uncontested facts demonstrate that the PIP was the result of two years of substandard performance and unprofessional behavior.

**ORDER**

For the forgoing reasons, defendant's motion for summary judgment (Docket No. 39) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 27, 2022